UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 15, 2009

| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
|---|---|---|
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| | : | Count 1: Obstruction of Congress |
| | : | (18 U.S.C. §§ 1505, 1515(b)) |
| | : | |
| WILLIAM R. CLEMENS, | : | Counts 2-4: False Statements |
| also known as "ROGER CLEMENS," | : | (18 U.S.C. § 1001(a)(2), (c)(2)) |
| | : | |
| Defendant. | : | Counts 5-6: Perjury |
| | : | (18 U.S.C. § 1621(1)) |

# INDICTMENT

The Grand Jury charges that:

Unless otherwise indicated, at all times material to this Indictment:

## INTRODUCTORY ALLEGATIONS

### Background

Major League Baseball

1. Major League Baseball ("MLB") is the highest level of professional baseball in the United States and Canada. There are presently 30 MLB teams in 17 states, the District of Columbia and one Canadian province. MLB operates in interstate and foreign commerce and is subject to the jurisdiction of the United States Congress.

Defendant WILLIAM R. CLEMENS

2. Defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," was a

resident of Houston, Texas.

3. From between in or about 1983 until in or about 2007, CLEMENS was employed as a professional baseball player. CLEMENS played in MLB for the Boston Red Sox (1984-1996), the Toronto Blue Jays (1997-1998), the New York Yankees (1999-2003 and 2007), and the Houston Astros (2004-2006). CLEMENS was a starting pitcher throughout his career.

Strength Coach #1

4. Strength Coach #1 – whose identity is known to the Grand Jury – was employed as the strength and conditioning coordinator for the Toronto Blue Jays from in or about 1998 to in or about 1999. Strength Coach #1 met CLEMENS in or about February 1998 during the course of his employment with the Toronto Blue Jays and began to provide CLEMENS with strength and conditioning training. During the 1998 baseball season, CLEMENS lived in a hotel suite that was part of the SkyDome stadium complex in Toronto, Ontario, Canada. Strength Coach #1 lived near CLEMENS in the SkyDome hotel complex.

5. Strength Coach #1 was employed as an assistant strength and conditioning coach for the New York Yankees from in or about 2000 through in or about 2001. Prior to the 2000 season, CLEMENS recommended that the Yankees hire Strength Coach #1 and CLEMENS offered to pay Strength Coach #1's salary. During his employment with the Yankees, Strength Coach #1 served as CLEMENS's private strength and conditioning coach, although Strength Coach #1 worked with other New York Yankees players as well.

6. Following Strength Coach #1's employment with the New York Yankees organization, Strength Coach #1 continued to serve as CLEMENS's private strength and conditioning coach. CLEMENS paid Strength Coach #1 varying amounts. CLEMENS continued to train with Strength

Coach #1 until about August 2007.

## Performance Enhancing Drugs, Vitamin B12 and Lidocaine

### Anabolic Steroids

7. Anabolic-androgenic steroids ("anabolic steroids") are drugs that mimic the effects of the naturally occurring steroids testosterone and dihydrotestosterone. Anabolic steroids increase protein synthesis within cells, which results in the buildup of cellular tissue, especially in muscles.

8. Anabolic steroids are used therapeutically in medicine to treat testosterone deficiencies, stimulate bone growth and appetite, induce male puberty, and treat chronic wasting conditions such as AIDS. The use of anabolic steroids may enhance athletic performance in various ways, including increasing muscular tissue recovery time from strenuous exercise or injury. Anabolic steroids are known as performance enhancing drugs ("PED" or "PEDs").

9. Anabolic steroids are commonly administered as an oral tablet or an injectable liquid. Injectable anabolic steroids are packaged in small vials that contain a premixed liquid that is typically white, yellowish, or clear in color. These anabolic steroids are commonly administered by intramuscular injection using a 22-gauge needle that is approximately one and a half inches long (sometimes referred to herein as a "long needle").

10. Under the federal criminal code, anabolic steroids were a Schedule III controlled substance and were available legally only through a physician's prescription. It was illegal to possess or distribute anabolic steroids without a prescription. The use of anabolic steroids carries a risk of negative side effects, including but not limited to liver damage, heart damage, kidney damage, cancer, circulation problems, and psychiatric conditions such as mania.

11. At all relevant times herein, and since at least no later than 1971, the use of prescription

drugs by MLB players without a physician's prescription was prohibited by MLB.  Until 2003, however, MLB did not test major league players for the use of anabolic steroids.

<div align="center">Human Growth Hormone</div>

12.  Human growth hormone or growth hormone ("HGH") is a protein-based polypeptide hormone that is produced naturally in the human body by the anterior pituitary gland.  HGH stimulates growth and cell reproduction and regeneration in humans and animals.

13.  HGH has been used clinically to treat children's growth disorders and adult growth hormone deficiency.  Effects of HGH, when used within a proper regimen, may include decreased body fat, increased bone density, increased energy levels, improved skin tone and texture, and improved immune system function.

14.  HGH is commonly packaged in a "kit" form and requires the user to mix powder and water to produce an injectable clear liquid.  HGH is commonly administered by a subcutaneous injection in the naturally occurring fat of the abdomen by using an insulin needle that is approximately a quarter inch to a half inch long (sometimes referred to herein as a "short needle").

15.  The use of HGH may enhance athletic performance by, among other things, increasing cellular recovery time from strenuous exercise or injury.  HGH is known as a performance enhancing drug or PED.

16.  HGH was available legally only through a physician's prescription.  The use of HGH carries the risk of negative side effects including but not limited to cancer, circulatory problems, heart enlargement and damage, liver damage, hypothyroidism, acromegaly, impotence in men, and menstrual irregularities in women.

17. The use of prescription drugs by MLB players without a physician's prescription was

prohibited by MLB. In addition, in or about January 2005, HGH was added to the players' collective bargaining agreement as a banned substance. There was, however, no reliable PED test to detect HGH in the urine.

<u>Vitamin B12</u>

18. Vitamin B12 – also called cyanocobalamin – is a water-soluble vitamin that contributes to the normal functioning of the brain and nervous system and to the formation of blood.

19. Vitamin B12 can be manufactured in an injectable form that is red or pink in color. Injectable vitamin B12 is commonly administered by intramuscular injection using a long needle.

20. Vitamin B12 in injectable liquid form was available legally only through a physician's prescription. Vitamin B12 was occasionally prescribed to patients suffering from anemia or low red blood cell counts, or to patients who are experiencing senile dementia or Alzheimer's disease.

21. Some MLB clubs approved the supervised use and administration of vitamin B12 injections for its players. The Toronto Blue Jays approved the supervised use and administration of vitamin B12 injections for its players in 1997 and 1998. Injectable vitamin B12 was stored in a locked cabinet in the medical trainer's office at the SkyDome. Only Toronto Blue Jays team physicians were permitted to administer vitamin B12 injections to team members. All other team personnel – including strength and conditioning coordinators and coaches – were forbidden to administer injections of any kind, including vitamin B12 injections.

22. The New York Yankees approved the supervised use and administration of vitamin B12 for its players in 1999 through 2003. Injectable vitamin B12 was stored in a locked cabinet in the medical trainer's office at Yankee Stadium. Only New York Yankees team physicians or medical trainers were permitted to administer vitamin B12 injections. All other team personnel – including

strength and conditioning coaches – were forbidden to administer injections of any kind, including vitamin B12 injections.

<u>Lidocaine</u>

23. Lidocaine is a local anesthetic drug that is commonly used to relieve pain on a short-term basis. The injectable form of lidocaine is clear in color. Lidocaine is commonly administered by injecting the drug directly into the affected area with a long needle.

24. Injections of lidocaine were available legally only through a physician's prescription. It was illegal to possess, distribute or administer injectable lidocaine without a prescription. The improper administration of lidocaine by individuals who are not trained to administer the drug could result in catastrophic physical consequences, including permanent paralysis or death.

25. Some MLB clubs approved the use of lidocaine for its players. The Toronto Blue Jays in 1997 and 1998 approved the limited and supervised administration of lidocaine for its players. Prescription medications such as lidocaine were stored in a locked cabinet in the medical trainer's office at the SkyDome. Only Toronto Blue Jays team physicians were permitted to administer lidocaine injections to team members. All other team personnel – including strength and conditioning coordinators and coaches – were forbidden to administer injections of any kind, including lidocaine injections.

26. The New York Yankees approved the limited and supervised administration of lidocaine for its players at all relevant times herein. Prescription medications such as lidocaine were stored in a locked cabinet in the medical trainer's office at Yankee Stadium. Only New York Yankees team physicians or other trained medical personnel were permitted to administer lidocaine injections. All other team personnel – including strength and conditioning coaches – were forbidden to administer

injections of any kind, including lidocaine injections.

## COUNT ONE (Obstruction of Congress)

1. The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment as though fully set forth herein.

2. The United States Congress is the legislative branch of the United States government and is divided into two chambers, the Senate and the House of Representatives ("the House"). The House is empowered by the Constitution, among other things, to regulate commerce among the states and foreign nations.

3. The House maintains various committees to assist it with discharging its legislative function. The House Committee on Oversight and Government Reform ("the Committee") is the main investigative committee in the House. As set forth in House Rule X, Clause 4, the Committee has authority to investigate subjects within the Committee's legislative jurisdiction as well as any matter within the jurisdiction of the other standing House Committees.

### Congress Holds Investigative Hearings on PED Use in Major League Baseball

#### The 2005 Committee Hearings

4. In or about March 2005, the Committee held a hearing in Washington, D.C., titled "Restoring Faith in America's Pastime: Evaluating Major League Baseball's Efforts to Eradicate Steroid Use." One purpose of this hearing was to investigate the use of PEDs in professional baseball as part of Congress's authority to regulate commerce and evaluate the nation's drug laws. The Committee took testimony from several witnesses, including five former or then active MLB players. Player #1 – whose identity is known to the Grand Jury – admitted his own use of anabolic steroids over the course of a long-playing career.

5. During the course of the Committee's investigation, the following matters, among others, were material and pertinent to the Committee investigation:

   i. The existence of PED use in MLB;

   ii. The prevalence of PED use in MLB, including PED use by well-known players;

   iii. PED use by teenage athletes;

   iv. MLB's awareness of PED use in MLB; and

   v. What measures, if any, MLB planned to implement to detect and deter PED use.

### The Mitchell Report

6. On or about March 30, 2006, the Commissioner of MLB, partially in response to concerns raised by the Committee during its 2005 hearing, engaged former Ambassador, United States Senator, United States District Judge, and United States Attorney George J. Mitchell and empowered him to conduct a comprehensive investigation of PED use in MLB.

7. During that investigation, Senator Mitchell and his staff interviewed numerous individuals and collected relevant information.

8. On or about December 13, 2007, Senator Mitchell issued a 409-page report titled "Report to the Commissioner of Baseball of an Independent Investigation into the Illegal Use of Steroids and Other Performance Enhancing Substances by Players in Major League Baseball" ("the Mitchell Report"). The Mitchell Report contained multiple allegations of PED use in MLB over the years preceding its release. Among other allegations, the Mitchell Report stated that CLEMENS, while a member of the Toronto Blue Jays and New York Yankees, used anabolic steroids on multiple occasions in 1998, 2000, and 2001, and HGH on multiple occasions in 2000. The Mitchell Report also set forth a series of recommendations to the Commissioner of MLB addressing PED use in

MLB.

## The 2008 Committee Hearings

9. On or about December 13, 2007, in response to the allegations set forth in the Mitchell Report, CLEMENS issued the first of a series of public statements explicitly denying his use of performance-enhancing steroids. Shortly thereafter, CLEMENS stated publicly that he would appear before the Committee to answer any questions.

10. On or about January 15, 2008, the Committee held a hearing titled "The Mitchell Report: The Illegal Use of Steroids in Major League Baseball." At that hearing, Senator Mitchell testified as to the findings in the Mitchell Report.

11. The Committee possessed the authority to investigate, among other matters, the use and distribution of controlled substances and other drugs, including anabolic steroids and HGH, in MLB and elsewhere. The Committee's investigation was conducted pursuant to its authority, consistent with applicable rules of the House. Based on its investigation, the House had authority to pass legislation protecting public health, including legislation governing the use and distribution of controlled substances and other drugs. The House also had authority to pass legislation governing the regulation of MLB in interstate and foreign commerce, including legislation protecting the integrity of the game of MLB.

12. During the course of the Committee's 2008 continuing investigation and hearing, the following matters, among others, were material and pertinent to the Committee investigation:

    i. The accuracy of the Mitchell Report as it related to the use of PEDs by CLEMENS and other MLB players;

    ii. The existence of PED use in MLB, including PED use by CLEMENS and other well-known players;

    iii. PED use by teenage athletes; and

    iv. Whether MLB planned to adopt the recommendations in the Mitchell Report and whether additional measures were needed to detect and deter PED use in MLB.

13. The Committee Chairman was authorized to administer an oath to witnesses who appeared before the Committee.

14. On or about January 18, 2008, the Committee invited CLEMENS to testify concerning the accuracy of the Mitchell Report as it related to allegations of CLEMENS's PED use. The Committee did not issue CLEMENS a subpoena, and CLEMENS was under no legal obligation to testify. CLEMENS retained his right under the Fifth Amendment to the United States Constitution to refuse to answer any questions that might tend to incriminate him.

<u>CLEMENS's Sworn Testimony Before the Committee</u>

15. On or about February 5, 2008, CLEMENS appeared voluntarily and provided a sworn deposition ("Deposition") to Committee staff in Washington, D.C. CLEMENS was placed under oath by an individual authorized and competent to administer the oath. (Deposition at 5.) Before the questioning began, Committee staff told CLEMENS, "[t]his is a deposition in the committee's investigation into the illegal use of performance-enhancing drugs in Major League Baseball." (Deposition at 5.) The following exchange occurred between Committee staff and CLEMENS:

> Q. Because you have been placed under oath, your testimony here has the same force and effect as if we are actually out in the open committee hearing. If you knowingly provide false testimony, you could be subject to criminal prosecution for perjury, false statements, and other offenses. Do you understand this?
>
> A. I do.
>
> Q. Is there any reason you are unable to provide truthful answers in today's deposition?

      A.  No.

(Deposition at 7.)

    16.  During the February 5, 2008 Deposition, CLEMENS testified under oath, among other things: "I have not used steroids or growth hormone" (Deposition at 9); "I am just making it as possibly as clear as I can.  I haven't done steroids or growth hormone" (Deposition at 10); and "I never used steroids.  Never performance-enhancing steroids." (Deposition at 24.)  CLEMENS also testified in the Deposition that he had never possessed or seen anabolic steroids or HGH, and that he had never discussed anabolic steroids or HGH with anyone.  (Deposition at 65-71, 92-98, 101-103, 170-175.)

    17.  On or about February 13, 2008, CLEMENS appeared voluntarily at the hearing titled "The Mitchell Report: The Illegal Use of Steroids in Major League Baseball, Day 2." ("Hearing.")  CLEMENS was placed under oath by the Committee Chairman who was authorized and competent to administer the oath.  The following exchange occurred between a Committee Member and CLEMENS:

> Q. . . . I am going to ask you a few questions, Mr. Clemens, and I first want to make sure that you are very clear.  You understand that you are under oath; is that correct?
>
> A.  That's correct.
>
> Q.  And you know what that means; is that correct?
>
> A.  That's correct.

(Hearing at 86.)

    18.  During his February 13, 2008 Hearing testimony, CLEMENS testified under oath, among other things: "Let me be clear.  I have never taken steroids or HGH" (Hearing at 21); "[Strength

Coach #1] has never given me growth hormone or steroids" (Hearing at 123); and "And again, this man [Strength Coach #1] has never given me HGH or growth hormone or steroids of any kind . . ." (Hearing at 138.)

### Obstruction of Congress

19. Between on or about February 5, 2008, and on or about February 13, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," did corruptly endeavor to influence, obstruct, and impede the due and proper exercise of the power of inquiry under which an investigation was being had by a Committee of the United States House of Representatives by making the following statements, among others, that CLEMENS knew to be false and misleading to Committee Members and staff:

(1) CLEMENS's sworn Deposition testimony on February 5, 2008, that he had never used HGH (Deposition at 24-25);

(2) CLEMENS's sworn Deposition testimony on February 5, 2008, that he never spoke to Strength Coach #1 about HGH (Deposition at 67);

(3) CLEMENS's sworn Deposition testimony on February 5, 2008, that with respect to HGH, "I couldn't tell you the first thing about it" (Deposition at 68);

(4) CLEMENS's sworn Hearing testimony on February 13, 2008, that he had never taken HGH (Hearing at 21);

(5) CLEMENS's sworn Deposition testimony on February 5, 2008, that he had never used anabolic steroids (Deposition at 24);

(6) CLEMENS's sworn Hearing testimony on February 13, 2008, that he had never taken steroids (Hearing at 21);

(7) CLEMENS's sworn Deposition testimony on February 5, 2008, that Strength Coach #1 injected him with vitamin B12 (Deposition at 37-38);

(8) CLEMENS's sworn Deposition testimony on February 5, 2008, that "four or five needles" containing vitamin B12 would be "already lined up ready to go" in the trainers' room after games (Deposition at 146);

(9) CLEMENS's sworn Hearing testimony on February 13, 2008, that Strength Coach #1 injected him with vitamin B12 (Hearing at 96);

(10) CLEMENS's sworn Deposition testimony on February 5, 2008, that Strength Coach #1 injected him with lidocaine (Deposition at 43-44);

(11) CLEMENS's sworn Hearing testimony on February 13, 2008, that Strength Coach #1 injected him with lidocaine (Hearing at 122);

(12) CLEMENS's sworn Hearing testimony on February 13, 2008, that a New York Yankees teammate "misheard" or "misremember[ed]" when CLEMENS told this teammate in or about 1999 or 2000 that he (defendant CLEMENS) had taken HGH (Hearing at 86-87);

(13) CLEMENS's sworn Deposition testimony on February 5, 2008, that Strength Coach #1 injected CLEMENS's wife with HGH in 2003 inside CLEMENS's home in Houston without defendant CLEMENS's prior knowledge or approval (Deposition at 175-177);

(14) CLEMENS's sworn Deposition testimony on February 5, 2008, that he had "no idea" that Senator Mitchell wanted to talk to him in connection with Senator Mitchell's investigation of PED use in MLB (Deposition at 115); and

(15) CLEMENS's sworn Deposition testimony on February 5, 2008, that he was not at Player #1's house in south Florida on or about June 9, 1998 (Deposition at 17).

**(Obstruction of Congress, in violation of Title 18, United States Code, Sections 1505, 1515(b))**

## COUNT TWO (False Statements – HGH)

1. The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment and Paragraphs 2-18 of Count One of this Indictment as though fully set forth herein.

2. On or about February 5, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a United States House Committee within the legislative branch of the Government of the United States, in that CLEMENS, in response to questions posed to him by a Committee staff member, gave the following false testimony denying his use of HGH (underlined portions alleged as materially false):

> Q. The focus of our investigation is, in a lot of ways, the Mitchell Report; and the Mitchell Report contains allegations about your use of anabolic steroids and human growth hormones, HGH. And you have been very clear in your public statements that these allegations about your use are not true.
>
> I will in a bit go through some specific statements in the Mitchell Report, but, before I do that, I want to give you an opportunity for you to raise with us areas where you think are the most glaring inaccuracies or problems in the Mitchell Report as it relates to you.
>
> A. . . . I have read the report, what it pertains to me. . . . I have actually the report in front of me.
>
> And, like I have stated in the press conferences and when I first came out to make my statements when I heard about these allegations, basically it pertains to what [Strength Coach #1] is saying about me. It is false. <u>I have not used</u> steroids or <u>growth hormone.</u>

(Deposition at 8-9.)

\* \* \*

Q. And human growth hormone, have you ever used human growth hormone?

A. <u>Never.</u>

(Deposition at 24-25.)

\* \* \*

Q. I think you have already answered this, but let me just ask it again. Have you ever taken human growth hormones during your baseball career?

A. <u>No, I have not.</u>

(Deposition at 102.)

3. In truth and in fact, as CLEMENS well knew when he gave this sworn statement, CLEMENS knowingly received injections of HGH while he was an MLB player.

**(False Statements, in violation of Title 18, United States Code, Section 1001(a)(2), (c)(2))**

**COUNT THREE (False Statements – Steroids)**

1. The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment and Paragraphs 2-18 of Count One of this Indictment as though fully set forth herein.

2. On or about February 5, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a United States House Committee within the legislative branch of the Government of the United States, in that CLEMENS, in response to questions posed to him by a Committee staff member, gave the following false testimony denying his use of steroids (underlined portions alleged as materially

false):

>   A. . . . I am just making it as possibly as clear as I can. <u>I haven't done steroids</u> or growth hormone.

(Deposition at 10.)

<div align="center">* * *</div>

>   Q. And let me ask just a general question. Did you during your playing career use steroids?
>
>   A. <u>I never used steroids. Never performance-enhancing steroids.</u>
>
>   . . .
>
>   Q. Anabolic steroids, which are performance-enhancing steroids, you have never used those?
>
>   A. <u>That is correct.</u>

(Deposition at 24.)

3.  In truth and in fact, as CLEMENS well knew when he made this sworn statement, CLEMENS knowingly received injections of anabolic steroids while he was an MLB player.

**(False Statements, in violation of Title 18, United States Code, Section 1001(a)(2), (c)(2))**

### COUNT FOUR (False Statements – Vitamin B12)

1.  The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment and Paragraphs 2-18 of Count One of this Indictment as though fully set forth herein.

2. On or about February 5, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a United States House Committee within the legislative branch of the Government of the United

States, in that CLEMENS, in response to questions posed to him by a Committee staff member, gave the following false testimony concerning his use of vitamin B12 (underlined portions alleged as materially false):

> Q. Let me move on to injections from [Strength Coach #1]. You have said that [Strength Coach #1] gave you B12 shots. I want to ask you about that. Let me just start with how many times [Strength Coach #1] would have injected you with B12?
>
> A. I mean -- again, I am going to guess, because I have had so many. <u>[Strength Coach #1] would have been somewhere between four and six times of B12.</u>
>
> Q. And when would he have given you those shots?
>
> A. I am sorry?
>
> Q. When -- do you have any recollection of when [Strength Coach #1] would have injected you?
>
> A. <u>Toronto and New York, when I was with the Yankees.</u>
>
> Q. So 1998?
>
> A. <u>1998, definitely.</u>

(Deposition at 37.)

3. In truth and in fact, as CLEMENS well knew when he made this sworn statement, Strength Coach #1 never injected CLEMENS with vitamin B12.

**(False Statements, in violation of Title 18, United States Code, Section 1001(a)(2), (c)(2))**

### COUNT FIVE (Perjury – HGH)

1. The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment and Paragraphs 2-18 of Count One of this Indictment as though fully set forth herein.

2. On or about February 13, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," having taken an oath before a competent tribunal,

officer, and person, in a case in which the law of the United States authorizes an oath to be administered, that he would testify truly, did willfully and knowingly and contrary to that oath state a material matter which he did not believe to be true, that is, CLEMENS gave the following false testimony denying his use of HGH (underlined portion alleged as materially false):

> "[Strength Coach #1] has never given me growth hormone or steroids." (Hearing at 123.)

> "And again, this man [Strength Coach #1] has never given me HGH or growth hormone or steroids of any kind . . ." (Hearing at 138.)

3. In truth and in fact, as CLEMENS well knew when he gave this testimony, CLEMENS knowingly received injections of HGH from Strength Coach #1 while he was an MLB player.

**(Perjury, in violation of Title 18, United States Code, Section 1621(1))**

**COUNT SIX (Perjury – Steroids)**

1. The Grand Jury realleges Paragraphs 1-26 of the Introductory Allegations of this Indictment and Paragraphs 2-18 of Count One of this Indictment as though fully set forth herein.

2. On or about February 13, 2008, in the District of Columbia, defendant WILLIAM R. CLEMENS, also known as "ROGER CLEMENS," having taken an oath before a competent tribunal, officer, and person, in a case in which the law of the United States authorizes an oath to be administered, that he would testify truly, did willfully and knowingly and contrary to that oath state a material matter which he did not believe to be true, that is, CLEMENS gave the following false testimony denying his use of steroids (underlined portion alleged as materially false):

> "Let me be clear. I have never taken steroids or HGH." (Hearing at 21.)


3. In truth and in fact, as CLEMENS well knew when he gave this testimony, CLEMENS knowingly received injections of anabolic steroids while he was an MLB player.

**(Perjury, in violation of Title 18, United States Code, Section 1621(1))**

A TRUE BILL


FOREPERSON


/s/
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA