UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : CRIMINAL NO. 10-223 (RBW) |
| v. | : |
| WILLIAM R. CLEMENS, | : |
| Defendant | : |

GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, requests that the Court give the standard instructions listed below by name and number to the jury at the conclusion of the trial in this case. The government also requests that the Court give the instructions which are thereafter set forth in full and which pertain to the offenses charged in the indictment. The government respectfully seeks leave to make any additional requests for general or specific jury instructions that may become necessary as a result of trial proceedings.[1]

The following instructions are drawn from the Bar Association of the District of Columbia's Criminal Jury Instructions (8th Ed. Revised 2010) (The Redbook):

General Instructions

    1.102   Preliminary Instruction Before Trial

    1.104   Question Not Evidence

---

[1] In the days leading up to this filing, government counsel have conferred with defense counsel on proposed jury instructions. The government provided defendant with a copy of its proposed instructions on June 27. Defendant provided the government with his draft instructions and objections in the afternoon on June 30 and the government has had insufficient opportunity to consider objections to the defense proposed instructions. There are, however, several proposed defense instructions that are objectionable and the government would request an opportunity to be heard on these objections. The government defers to the Court on how to address those objections.

1.105   Notetaking by Jurors

1.107   Preliminary Instruction Where Identity of Alternates Is Not Disclosed

1.108   A Juror's Recognition of A Witness or Other Party Connected to the Case

1.202   Cautionary Instruction on Publicity and Use of the Internet

2.100   Furnishing the Jury With a Copy of the Instructions

2.101   Function of Court

2.102   Function of Jury

2.103   Jury's Recollection Controls

2.104   Evidence in Case – Judicial Notice, Stipulations (if applicable)

2.105   Statements of Counsel

2.106   Indictment Not Evidence

2.107   Burden of Proof -- Presumption of Innocence

2.108   Reasonable Doubt

2.109   Direct and Circumstantial Evidence

2.110   Nature of Charges Not to be Considered

2.111   Number of Witnesses

2.200   Credibility of Witnesses

2.202   Multiple Counts

2.207   Law Enforcement Official's Testimony

2.208   Right of Defendant Not to Testify (If Applicable)

2.209   Defendant as Witness (If Applicable)

2.205   Witness with a Plea Agreement

2.215 Expert Testimony

2.216 Evaluation of a Prior Inconsistent Statement of a Witness

2.217 Evaluation of a Prior Consistent Statement of a Witness

2.218 Impeachment by Proof of Conviction of Crime – Witness

2.310 Transcripts of Tape Recordings

2.405 Unanimity

2.407 Verdict Form Explanation

2.500 Selection of Foreperson

2.501 Exhibits During Deliberations

2.505 Possible Punishment Not Relevant

2.508 Cautionary Instruction on Publicity, Communication and Research

2.509 Communications Between Court and Jury During Deliberations

2.510 Attitude and Conduct of Jurors During Deliberations

2.75 Communication Between Court and Jury During Deliberations

<u>Definitions and Proof</u>

3.101 Proof of State of Mind

3.103 "On or About" – Proof of

<u>Offenses</u>

The government also requests the following particular instructions pertaining to the offenses charged in the indictment.

**PROPOSED INSTRUCTION 1 (Obstruction of Congress):**

In order to establish that the defendant is guilty of the charge in the indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the date set forth in the indictment, a proceeding was pending before The House Committee on Oversight and Government Reform;

Second, the defendant knew that proceeding was pending before The House Committee on Oversight and Government Reform; and

Third, that the defendant did corruptly endeavor to influence, obstruct or impede the due and proper exercise of the power of inquiry under which the hearing entitled "The Mitchell Report: The Illegal Use of Steroids in Major League Baseball" was being had by The House Committee on Oversight and Government Reform.

Modern Federal Jury Instructions – Criminal § 46.02; United States v. Bhagat, 436 F.3d 1140, 1148-49 (9th Cir. 2006).

The term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

18 U.S.C. § 1515(b).

The first element the government must prove beyond a reasonable doubt is that on or about the dates set forth in the indictment, a proceeding was pending before The House Committee on Oversight and Government Reform. In this regard, you are instructed that The House Committee on Oversight and Government Reform is a Committee of the United States House of Representatives and that a proceeding includes the hearing entitled "The Mitchell Report: The Illegal Use of Steroids in Major League Baseball."
.
The second element the government must prove beyond a reasonable doubt is that the defendant knew that the proceeding was pending before The House Committee on Oversight and Government Reform. In this regard, there is evidence that the defendant appeared before The House Committee on Oversight and Government Reform in February of 2008.

The final element the government must prove beyond a reasonable doubt is that the defendant did corruptly influence, obstruct or impede, or endeavor to corruptly influence, obstruct or impede The House Committee on Oversight and Government Reform in the discharge of its duties. As I explained earlier, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

Success of the endeavor is not an element of the crime.  The term endeavor is designed to reach all conduct which is aimed at influencing, intimidating and impeding the proceedings.  Thus, it is sufficient to satisfy this element if you find that the defendant made any effort or did any act for the purpose of corruptly influencing, obstructing or impeding the proceeding.

In order to find the defendant guilty of Count One of the Indictment, you must all agree that the defendant made at least one false or misleading statement.  The underlined portions are hereby alleged as false or misleading.

**Obstructive Act 1:**

Q.  And human growth hormone, have you ever used human growth hormone?

A.  <u>Never.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 23.

**Obstructive Act 2:**

Q.  Did you ever speak with Mr. McNamee about human growth hormone?

A.  <u>I have not.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 66.

**Obstructive Act 3:**

Q.  And did you do any research on your own about human growth hormone?

A.  No, I haven't. Again, just basically in general when it would come up over the last, you know, few years of baseball or talks when it was on TV and things of that nature.  But I've never researched it.  <u>I couldn't tell you the first thing about it.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 67.

**Obstructive Act 4:**

Let me be clear.  <u>I have never taken</u> steroids or <u>HGH.</u>

Hearing Testimony of William Roger Clemens, February 13, 2008 at page 21.

**Obstructive Act 5:**

>Q. And let me ask just a general question. Did you during your playing career use steroids?
>
>A. <u>I never used steroids.  Never performance-enhancing steroids.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at pages 22-23.

**Obstructive Act 6:**

>Let me be clear.  <u>I have never taken steroids</u> or HGH.

Hearing Testimony of William Roger Clemens, February 13, 2008 at page 21.

**Obstructive Act 7:**

>Q. Let me move on to injections from Mr. McNamee.  You have said that Mr. McNamee gave you B12 shots.  I want to ask you about that.  Let me just start with how many times Mr. McNamee would have injected you with B12?
>
>A. I mean – again, I am going to guess, because I have had so many.  <u>McNamee would have been somewhere between four and six times of B12.</u>
>
>Q. And when would he have given you those shots?
>
>A. I am sorry?
>
>Q. When – do you have any recollection of when Mr. McNamee would have injected you?
>
>A. <u>Toronto and New York, when I was with the Yankees.</u>
>
>Q. So 1998?
>
>A. <u>1998, definitely.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 36.

**Obstructive Act 8:**

>Mr. Hardin.  Create a visual scene for them, how shots are handled.
>
>Mr. Breuer.  Coming out of the shower or something.
>
>The Witness.  Yes, a B12-shot.  And the same way McNamee after a game, and I am passing the room, and I told him, you know, that I need a B12 or the doctor, whatever, <u>and there is four or</u>

6

<u>five needles already lined up ready to go.</u>  And you get it in your shirt or you pull your jeans down, and they give you a B12-shot, and you are out the door.

Most of mine – most of mine were always after a game.

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 145.

**Obstructive Act 9:**

Mr. DAVIS OF VIRGINIA.  Did you inject yourself with B-12 or would Mr. McNamee ever inject you or do you remember?

Mr. CLEMENS.  I have never injected myself.  <u>Mr. McNamee's given me three shots–when we were traveling, three shots of B-12, two in New York.</u>

Hearing Testimony of William Roger Clemens, February 13, 2008 at page 96.

**Obstructive Act 10:**

Q.  Yeah.  In your 60 Minutes interview, you said that Mr. McNamee gave you lidocaine shots.  In your press conference, you said this happened when you were with the Blue Jays, and it was for lower back pain.  Can you tell us about the times Mr. McNamee injected you with lidocaine?

A.  It was a lidocaine shot.  <u>He only gave me lidocaine once</u>, and it did give me comfort in my lower back.

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 42.

**Obstructive Act 11:**

Mr. MICA.  Mr. Clemens, you claim that–you did admit that you were injected with vitamin B-12, and also you admitted to Lidocane.  OK, what color is the vitamin B-12 shot?  You told me you had quite a few shots.

Mr. CLEMENS.  Brian McNamee gave me shots on four to six occasions of B-12.  It is red or pink in color.  Lidocaine, I do not know the color of Lidocaine.  <u>He gave me one shot of Lidocaine in my lower back, and that happened in Toronto.</u>

Hearing Testimony of William Roger Clemens, February 13, 2008 at page 122.

**Obstructive Act 12:**

Mr. CUMMINGS.  Now, Mr. Clemens, I reminded you that you are under oath.  Mr. Clemens, do you think Mr. Pettitte was lying when he told the committee that you admitted using human growth hormones?

Mr. CLEMENS.  Mr. Congressman, Andy Pettitte is my friend.  He will–he was my friend before this.  He will be my friend after this.  And again, <u>I think Andy has misheard.</u>

Mr. CUMMINGS.  I am sorry, I didn't hear you?

Mr. CLEMENS.  <u>I believe Andy has misheard.</u>  Mr. Congressman, on his comments about myself using HGH, which never happened.
    The conversation that I can recall, that I had with Andy Pettittte, was at my house in Houston, while we were working out.  And I had expressed to him about a TV show something that I have heard about three older men that were using HGH and getting back their quality of life from that.  Those are the conversations that I can remember.
    Andy and I's friendship and closeness was such that, first of all, when I learned when he was–when he said that he used HGH, I was shocked.  I had no idea.
    When I just heard your statement and Andy's statement about that he also injected himself, I was shocked.  I had no idea that Andy Pettitte had used HGH.
    My problem with what Andy says, <u>and why I think he misremembers</u>, is that if Andy Pettitte knew that I had used HGH, or I had told Andy Pettitte that I had used HGH, before he would use the HGH, what have you, he would have come to me and asked me about it.  That is how close our relationship was.  And then when he did use it, I am sure he would have told me that he used it.

Hearing Testimony of William Roger Clemens, February 13, 2008 at page 87.

**Obstructive Act 13:**

    Q.  There was a grouping, I think, in the way it was asked.  So let me ask you specifically with regard to family members, do you have any knowledge of any family members using HGH?

    A.  I do.  My wife received a shot of HGH from Brian McNamee at my house.  I think it was in our master bedroom.  The year, I'm going to say 2003 possibly.  I believe there was an article, from what I understand, about HGH in the USA Today that came out a couple days earlier that week.  I don't know if it was the only article my wife had read.  And he gave her a shot of HGH.  She tells me that it happened extremely quick.  He was gone after it happened, literally gone.  He went to the airport, I found out.  <u>I was not present at the time.</u>  I found out later that evening.  And the reason I found out, because she was telling me that something was going on with her circulation, and this concerned me.

        *   *   *
    The Witness.  That night when I came back.  I was not – I think – again, what I can remember, <u>I know I wasn't present.</u>

8

Deposition Testimony of William Roger Clemens, February 5, 2008 at pages 173-174, 176.

**Obstructive Act 14:**

      Mr. Barnett.  That's why I think my question has been confusing.  I wasn't trying to ask when you knew about the allegations.  I am asking when did you know that Senator Mitchell –

      Mr. Hardin.  I am saying the same thing.

      Mr. Barnett.  – wanted to talk with you about – Senator Mitchell wanted to talk to you as part of his investigation?

      The Witness.  <u>I had no idea that Senator Mitchell wanted to talk to me.</u>  If it was about baseball and steroids in general, I would have went to see him.  And obviously, if I knew what Brian McNamee was stating about me in his report I would have been – I would have been there.

Deposition Testimony of William Roger Clemens, February 5, 2008 at pages 113-114.

**Obstructive Act 15:**

      Q.  Let me just go back here.  So you have or you haven't been to Mr. Canseco's house?

      A.  I sure could have been.  I wasn't here at this – at a party that he had.  I could have gone by there after a golf outing.  So – but I was not at this party.

      Q.  And could you have been at his house during this time period, June 8th to 10, 1998?

      A.  <u>No.</u>

Deposition Testimony of William Roger Clemens, February 5, 2008 at page 16.

**PROPOSED INSTRUCTION (Making a False Statement):**

The defendant is charged in Counts 2, 3 and 4 with the offense of making a false, fictitious or fraudulent statement in a matter within the jurisdiction of the United States government. For you to find the defendant guilty of this offense, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A) First, that the defendant made a statement or representation;

(B) Second, that the statement or representation was false, fictitious or fraudulent;

(C) Third, that the statement or representation was material;

(D) Fourth, that the defendant acted knowingly and willfully; and

(E) Fifth, that the statement or representation pertained to a matter within the jurisdiction of the legislative branch of the United States government.

Now I will give you more detailed instructions on some of these terms.

(A) A statement is "false" or "fictitious" if it was untrue when it was made, and the defendant knew it was untrue at that time. A statement is "fraudulent" if it was untrue when it was made, the defendant knew it was untrue at that time, and the defendant intended to deceive.

(B) A "material" statement or representation is one that has the natural tendency to influence or is capable of influencing a decision of the House Committee on Oversight and Government Reform. A statement need not actually influence the Committee in order to be material.

(C) A person acts "wilfully," as that term is used in these instructions, when that person acts deliberately, voluntarily, and intentionally.

(D) A matter is "within the jurisdiction of the legislative branch of the United States government" if the House Committee on Oversight and Government Reform has the power to exercise authority in that matter. In this regard, there is evidence that the House Committee on Oversight and Government Reform had the power to exercise authority in holding a hearing titled "Restoring Faith in America's Pastime: Evaluating Major League Baseball's Efforts to Eradicate Steroid Use."

It is not necessary that the government prove that the defendant knew the matter was within the jurisdiction of the United States government.

Sources: O'Malley, Grenig, and Lee §§ 40:07, 40:14 (5th ed. 2011);
6th Circuit Criminal Pattern Jury Instruction (2009);
United States v. Moore, 612 F.3d 698, 701-702 (D.C. Cir. 2010).

**COUNT TWO**

      The defendant is charged in Count Two with making a material false statement before the House Committee on Oversight and Government Reform in violation of 18 U.S.C. § 1001(c)(2). Count Two alleges that the defendant made the following material false statement (underlined below):

> Q.  The focus of our investigation is, in a lot of ways, the Mitchell Report; and the Mitchell Report contains allegations about your use of anabolic steroids and human growth hormones, HGH.  And you have been very clear in your public statements that these allegations about your use are not true.
>
> I will in a bit go through some specific statements in the Mitchell Report, but, before I do that, I want to give you an opportunity for you to raise with us areas where you think are the most glaring inaccuracies or problems in the Mitchell Report as it relates to you.
>
> A.  . . . I have read the report, what it pertains to me. . . . I have actually the report in front of me.
>
> And, like I have stated in the press conferences and when I first came out to make my statements when I heard about these allegations, basically it pertains to what [Strength Coach #1] is saying about me.  It is false.  <u>I have not used</u> steroids or <u>growth hormone.</u>

(Deposition at 7-8.)

* * *

> Q.  And human growth hormone, have you ever used human growth hormone?
>
> A.  <u>Never.</u>

(Deposition at 23.)

* * *

> Q.  I think you have already answered this, but let me just ask it again. Have you ever taken human growth hormones during your baseball career?
>
> A.  <u>No, I have not.</u>

(Deposition at 101.)

For you to find the defendant guilty of Count 2, you must find that the government has proved each and every one of the elements of the crime of making a false statement.

**COUNT THREE**

The defendant is charged in Count Three with making a material false statement before the House Committee on Oversight and Government Reform in violation of 18 U.S.C. § 1001(c)(2). Count Three alleges that the defendant made the following material false statement (underlined below):

>A. . . . I am just making it as possibly as clear as I can. <u>I haven't done steroids</u> or growth hormone.

(Deposition at 9.)

* * *

>Q. And let me ask just a general question. Did you during your playing career use steroids?
>
>A. <u>I never used steroids. Never performance-enhancing steroids.</u>
>
>. . .
>
>Q. Anabolic steroids, which are performance-enhancing steroids, you have never used those?
>
>A. <u>That is correct.</u>

(Deposition at 22-23.)

For you to find the defendant guilty of Count 3, you must find that the government has proved each and every one of the elements of the crime of making a false statement.

**COUNT FOUR**

The defendant is charged in Count Four with making a material false statement before the House Committee on Oversight and Government Reform in violation of 18 U.S.C. § 1001(c)(2). Count Four alleges that the defendant made the following material false statement (underlined below):

Q. Let me move on to injections from Mr. McNamee. You have said that Mr. McNamee gave you B12 shots. I want to ask you about that. Let me just start with how many times Mr. McNamee would have injected you with B12?

A. I mean -- again, I am going to guess, because I have had so many. <u>McNamee would have been somewhere between four and six times of B12.</u>

Q. And when would he have given you those shots?

A. I am sorry?

Q. When -- do you have any recollection of when Mr. McNamee would have injected you?

A. <u>Toronto and New York, when I was with the Yankees.</u>

Q. So 1998?

A. <u>1998, definitely.</u>

(Deposition at 36.)

For you to find the defendant guilty of Count 4, you must find that the government has proved each and every one of the elements of the crime of making a false statement.

**PROPOSED INSTRUCTION (Perjury – Counts 5 and 6):**

The defendant is charged in Count Five with perjury before the House Committee on Oversight and Government Reform in violation of 18 U.S.C. § 1621. Count Five alleges that the defendant made the following material false statement (underlined below):

"Brian McNamee has never given me growth hormone or steroids." (Hearing at 123.)
"And again, this man [Brian McNamee] has never given me HGH or growth hormone or steroids of any kind . . ." (Hearing at 138.)

The defendant is charged in Count Six with perjury before the House Committee on Oversight and Government Reform in violation of 18 U.S.C. § 1621. Count Five alleges that the defendant made the following material false statement (underlined below):

"Let me be clear. I have never taken steroids or HGH." (Hearing at 21.)

In order to sustain its burden of proof for the crime of perjury as charged in Counts 5 and 6 of the indictment, the government must prove the following seven essential elements beyond a reasonable doubt:

(1) The defendant testified under oath before the House Committee on Oversight and Government Reform;

(2) In that proceeding, the defendant testified as I have just stated;

(3) The testimony was false;

(4) The defendant knew his testimony was false;

(5) Defendant gave this testimony willingly and contrary to his oath;

(6) The false testimony was material;

(7) The defendant testified under an oath administered by a qualified person in a proceeding for which the law of the United States authorizes the administration of an oath.

O'Malley, Grenig, and Lee § 50:03 (2011).

To testify "willingly and contrary to his oath" means to voluntarily and deliberately give false testimony intending to avoid the known legal duty to testify truthfully.

O'Malley, Grenig, and Lee § 50:04 (2011).

False testimony is "material" if the testimony was capable of influencing the Committee on Oversight and Government Reform on the issues before it. A statement need not actually influence the Committee in order to be material.

6th Circuit Criminal Pattern Instruction

You are instructed that the testimony of one witness is not enough to support a finding that the defendant's testimony was false. There must be additional evidence – either the testimony of another person, or documentary evidence, or other evidence – which tends to support the testimony's falsity. The other evidence, standing alone, need not convince you beyond a reasonable doubt that the testimony was false. But, after considering all of the evidence on the subject, you must be convinced beyond a reasonable doubt that the testimony was false.

O'Malley, Grenig, and Lee § 50:05 (5th ed. 2011).

                Respectfully Submitted,

                RONALD C. MACHEN JR.
                UNITED STATES ATTORNEY
                D.C. Bar # 447889
                      / s /

By:      _____
                STEVEN J. DURHAM
                D.C. Bar # 993780
                DANIEL P. BUTLER
                D.C. Bar # 417718
                Assistant United States Attorneys
                Fraud & Public Corruption Section
                555 Fourth Street, N.W., 5th Floor
                Washington, D.C.  20530
                (202) 252-7862 and (202) 252-7881
                Steven.Durham@USDOJ.Gov
                Daniel.Butler@USDOJ.Gov